**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

MARK ADAMS,

    *Plaintiff*,

v.

AUGUST TAUSEND, *Bridgeport Township Supervisor,* RON WHEATLEY, *Bridgeport Township Building official/Administrator*, ROSE LICHT, *Bridgeport Township Manager,* DAVE DUFFETT, *Chief of Police, Bridgeport Township Police Department,* JEFF ROBERTS, *Patrol Sergeant, Bridgeport Township Police Department*, FLOYD KLOC, *Kloc & Associates, P.C.,* and WILLIAM FEDERSPIEL, *Saginaw County Sheriff,*

    *Defendants.*[1]

                                                /

CASE NO. 17-10708

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**FOR PARTIAL DISMISSAL PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**

**I.    RECOMMENDATION**

For the following reasons, **IT IS RECOMMENDED THAT all the claims be dismissed except for the excessive force and assault and battery claims in Counts 4 and 8.** Since those claims only logically pertain to Defendants Duffett and Roberts, **IT IS**

---

[1] Other Defendants listed in the caption of the original complaint were not named in the amended complaint and thus, were dismissed.

**FURTHER RECOMMENDED** that **all Defendants be DISMISSED except for Duffett and Roberts**.

## II. REPORT

### A. Introduction

Plaintiff Mark Adams filed a complaint on March 6, 2017 (Doc. 1), along with an application to proceed *in forma pauperis* (Doc. 2). District Judge Ludington referred this matter to the undersigned for all pretrial purposes on March 20, 2017. (Doc. 4). On March 23, 2017, the undersigned granted Adams' motion to proceed *in forma pauperis*. (Doc. 6). On March 23, 2017, prior to service of the complaint, Adams filed an amended complaint. (Doc. 7). That complaint supersedes Adams' prior complaint, and is the operational complaint.

### B. Screening Procedure and Standards

In enacting the original *in forma pauperis* statute, Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). In 1996, Congress enacted a screening procedure, *see* 28 U.S.C. § 1915(e)(2)(B), which requires that the court review all complaints where the plaintiff is proceeding *in forma pauperis* and that it *sua sponte* dismiss a case before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the document and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Federal Rule of Civil Procedure 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

    **C.**    **Adams' Factual Allegations**

Adams' allegations are varied and stretch over multiple years. Adams asserts that since 2010 he has owned a plot of land located at 3703 Riverview Drive, Bridgeport, Michigan (the "Property"). (Doc. 7 at 4). Adams asserts that he spoke with the Bridgeport Township code administrator regarding his planned use for the Property, and was told "if it's not a house, I don't need to be involved with it." (*Id.*). Following the election of Township Supervisor August Tausend, Adams alleges that he began being subjected to "[u]ndue and selective harrassments [sic]." (*Id.* at 5). In sum, Adams asserts that various persons connected to Saginaw County and Bridgeport Township ordered him to remove a recreational vehicle from the Property, mow the lawn on the Property, and remove certain

permanent or semi-permanent structures from the Property. (*Id*. at 4-7). Adams refused to comply; he was ticketed and the Township performed the ordered work on his behalf, charging him a fee. (*Id*. at 5-7). Adams refused to pay these fines and costs, thus "Bridgeport Township officials padded it to Adams [sic] tax bill." (*Id*. at 5).

Adams spoke at a Bridgeport Township meeting on March 4, 2016, seeking to redress his grievances regarding these fees and orders. (Doc. 7 at 9). Adams "exceed[ed] restrictions imposed on him regarding the resolution of grievances discussed during the public comments;" he was then arrested. (*Id*. at 9). Police Chief Duffett and "the entire Bridgeport Township police force" used "unnecessarily brutal" tactics to restrain and handcuff Adams. (*Id*.). He was later charged with misdemeanor disturbing the peace and felony resisting and obstructing police. (*Id*.).

During his incarceration Adams alleges he was denied access to a phone and his blood pressure medication. (Doc. 7 at 10). He alleges that he contacted Saginaw County Sheriff Federspiel, Attorney General William Schuette, and the Federal Bureau of Investigation ("FBI") regarding his arrest and incarceration, but that these parties "obstructed justice, failed to uphold Adams [sic] civil rights, refused to investigate or charge his assailants." (*Id*. at 11).

Warrants for Adams' arrest were issued "under dubious circumstances;" after eight months of "evad[ing]" authorities, he was arrested and held for three days. (Doc. 7 at 12-13). He was again denied his "vital blood pressure medication, denied phone calls to his mother, employees or attorney." (*Id*. at 13). He was "extorted $6000 cash . . . as an

4

alternative to spending 300 days in jail." (*Id.*). Adams further asserts that he has been prevented from using the Property in lawful manners. (*Id.* at 15).

### D. Analysis

#### 1. First Amendment Retaliation (Count 1)

Under this claim, Plaintiff alleges that Defendants arrested and assaulted him in retaliation for his protected expression, i.e., criticism of public officials. (Doc. 7 at ID 35.) Plaintiff notes that charges against him were eventually dismissed but that he suffered and was "left in anguish" for "over two months" as a result of the arrest and charges. (*Id.*)

To prevail on a First Amendment retaliation claim, a plaintiff must show: (1) the plaintiff engaged in constitutionally-protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection exists between elements one and two, that is the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc); *Kennedy v. City of Villa Hills*, 635 F.3d 210, 217 (6th Cir. 2011).

In the instant case, I suggest Plaintiff cannot meet the first element. Adams asserts that his "requests to redress grievances at the upcoming Township meeting were denied," yet he also asserts that he was provided the opportunity to hand a four-page memo documenting his grievances to members of the Township board. (Doc. 7 at 8-9). Adams further notes that he was permitted to address the board, but was "assaulted by Police Chief Duffett for exceeding restrictions imposed on him regarding the resolution of

5

grievances discussed during the public comments." (*Id*. at 9). Adams asserts that board member August Tausend ordered Duffett and his officers to assault him, and that those officers used excessive force in restraining and removing Adams from the meeting. (Doc. 7 at 9.) Adams contends that his glasses were knocked off, he was threatened that he would be tasered, and that his wrists and shoulders were "injured" "during the handcuffing process and the unduly rough treatment that followed." (*Id*.) He later notes that these actions were taken "in response to little more than 3 minutes of Plaintiffs [sic] words." (*Id*. at 19).

      The First Amendment right to free speech and redress of grievances is not unlimited. Adams readily admits that he was given time to address the Bridgeport Township board, and have his grievances heard. (Doc. 7 at 8-9). He further admits to "exceeding restrictions imposed on him regarding the resolution of grievances." (*Id*. at 9). Adams does not allege that he was treated differently from other meeting attendees, and he admits that he was permitted to present his issues. Adams thus appears to complain that he was not provided with an unlimited platform with which to present his claims. Time, place, and manner restrictions on the exercise of free speech do not violate the First Amendment, and are indeed necessary to the efficient operation of governmental meetings where the public is invited to speak. *See Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995) ("The Board regulations restricting public commentary to three minutes per item at the end of each meeting are the kind of reasonable time, place, and manner restrictions that preserve a board's legitimate interest in conducting efficient, orderly meetings."); *Wright v. Anthony*, 733 F.2d 575, 577 (8th Cir. 1984) (finding that a five-minute limitation on

6

speakers at a public hearing was a valid restriction of the time, place, or manner of speech, and did not infringe on First Amendment rights).

Since Plaintiff was not engaged in constitutionally protected conduct, I suggest that Plaintiff fails to state a claim for First Amendment retaliation and that this claim should be dismissed.

### 2. Fourth Amendment Unreasonable Seizure and Prosecution Without Probable Cause and Common Law False Arrest and Imprisonment and malicious prosecution (Counts 2, 3 and 9)

Under this claim, Plaintiff alleges that his arrest, imprisonment and prosecution for assaulting/resisting/obstructing were unreasonable because probable cause was lacking. Under both federal and Michigan law, claims of false arrest or false imprisonment require a showing that the arrest was not legal, i.e., that it was made without probable cause. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002); *Topev. Howe,* 179 Mich. App. 91 (1989). However, by Plaintiff's own recitation of the facts, Plaintiff exceeded the time limit and refused to comply with the board rules, resulting in him being forcibly removed from the meeting and threatened with being tased. (Doc. 7 at 9.)

The elements of the crime of resisting or obstructing are: (1) defendant assaulted, resisted, obstructed, opposed or endangered a police officer; (2) defendant knew or had reason to know that the person was a police officer performing his or her duties, and (3) that the officer's actions were lawful. *People v. Quinn*, 305 Mich. App. 484, 491 (2014). The facts as described by Plaintiff alone would provide probable cause to arrest and prosecute for resisting and obstructing. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 825 (9th Cir. 2013)(probable cause to arrest existed where defendant defiantly continued to

7

speak and remain at podium after mayor called a recess of the meeting); *Tsitsoulis v. Twp. of Denville*, No. 2:07-4544, 2009 WL 5205276, at *7 (D. N.J. Dec. 23, 2009)(citing state case where police had probable cause to charge defendant with resisting arrest where the mayor asked police to remove the allegedly disruptive defendant from a town meeting).

Accordingly, these claims should be dismissed.

### 3. Unreasonable seizures in the form of excessive force and assault and battery (Counts 4 and 8)

Under these claims, Plaintiff cites injuries described in previous paragraphs, i.e., that his glasses were knocked off, he was threatened that he would be tasered, and that his wrists and shoulders were "injured" "during the handcuffing process and the unduly rough treatment that followed." (Doc. 7 at 9, 22.) The unreasonable infliction of intense pain by pinching wrists and pushing joints to hyperextension, even without a permanent or visible injury, can be sufficient to state a claim for excessive force. *Evans v. Plummer*, ___ F. App'x ___, 2017 WL 1400495, at *5 (6th Cir. Apr. 19, 2017)(also finding qualified immunity protected officer who pointed taser at plaintiff). Accordingly, I recommend that these claims should survive the screening process.

### 4. 5th and 14th Amendment due process (Counts 5 and 7)

Under these claims, Plaintiff refers to "persecutions" for "unlawful tickets against Adams Winnebago which was lawfully sited on his property…." And for a "small garden barn" that was "lawfully sited" also. (Doc. 7 at 22-23.) The only specific allegation as to any flaw in the process by Plaintiff is that Defendant "Wheatley testified that he routinely overcharges citizens 'so that charges can later be dropped in plea bargaining and citizens

8

can go away feeling they got something.'" (Doc. 7 at 23.) Plaintiff also avers "unwarranted limitations" were placed on his property. (Doc. 7 at 25.) Plaintiff's statements under these claims fail to allege any particular facts where he was denied any process due him.

Looking beyond the claims, in the introductory portion of the amended complaint, Adams contends that Floyd Kloc, an attorney who serves as representative for Bridgeport Township, drafted court orders and pursued a "seemingly never-ending series of frivolous and selective persecutions" against him. (Doc. 7 at 6-7). Kloc allegedly ticketed Adams (or at least pursued tickets against Adams) for perceived violations of Bridgeport Township rules, including with regard to a barn, dock, deck, table, solar water pump, and other developments on Adams' property. (*Id*.). He alleges that Kloc later pursued warrants following Adams' failure to pay those tickets, resulting in Adams' arrest. (*Id*. at 13). Kloc also "sought . . . dubious zoning 'offenses' Warrants," and later moved to enforce court orders against Adams. (*Id*. at 14, 16). Adams finally asserts that Kloc has "profited handsomely . . . for his persistent harassments and unlawful takings of Adams [sic] rights." (*Id*. at 16).

As aptly discussed by a magistrate judge in our sister district, township attorneys operating in the role of a prosecutor are entitled to immunity as follows:

> Absolute prosecutorial immunity is a common-law doctrine that shields a prosecutor from liability under the federal civil rights laws. *See Imbler v. Pachtman,* 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Supreme Court has endorsed a "functional approach" for determining whether an official is entitled to absolute prosecutorial immunity, explaining that a court should look to the "nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). The functional approach focuses on whether the prosecutor's activities are "intimately associated with the

9

> judicial phase of the criminal process." *Imbler,* 424 U.S. at 430. Those acts that occur in the course of the prosecutor's role as an advocate for the state, such as initiation of the judicial proceedings, trial preparation, and actual case presentation in court, are protected by absolute immunity. *See Skinner v. Govorchin,* 463 F.3d 518, 525 (6th Cir.2006); *Ireland v. Tunis,* 113 F.3d 1435, 1444-45 (6th Cir.1997). The Sixth Circuit has specifically held that attorneys for a municipality who pursue a civil action for public nuisance and ordinance violations are also entitled to absolute immunity "when their duties are functionally analogous to those of a prosecutor's regardless of whether those duties are performed in the course of a civil or criminal action." *Cooper v. Parrish,* 203 F.3d 937, 947 (6th Cir.2000) (quoting *Shrob v. Catterson,* 948 F.2d 1402, 1411 (3d Cir.1991)); *accord Smith v. Power,* 346 F.3d 740 (7th Cir.2003) (assistant city attorney who initiated proceedings to demolish building under city building code entitled to prosecutorial immunity). "Indeed, as long as the prosecutors were functioning in an enforcement role and acting as advocates for the state in initiating and prosecuting judicial proceedings, they are entitled to an absolute immunity defense." *Cooper,* 203 F.3d at 947.

*Kennedy v. Grattan Twp.*, No. 106-CV-657, 2007 WL 1108571, at *4 (W.D. Mich. Feb. 14, 2007), report and recommendation adopted, No. 106-CV-657, 2007 WL 1108566 (W.D. Mich. Apr. 10, 2007). In this case, Adams alleges that Kloc did no more than pursue actions against him for violation of township ordinances, and for Adams' failure to comply with court orders regarding those nuisance violations. Absolute prosecutorial immunity would protect Kloc from these claims even if he acted wrongfully or maliciously. *See Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989).

I therefore suggest that these claims should therefore be dismissed.

### 5.    8th Amendment cruel and unusual punishment (Count 6)

Under this claim, Plaintiff refers to facts stated in the earlier portion of the amended complaint. (Doc. 7 at 23.) Under these provisions, Adams asserts that Saginaw County Sheriff Federspiel "recklessly endangered Adams while jailed at the Saginaw County Jail,"

10

by placing him in an "overcrowded cell, exceeding lawful capacity by at least six," by housing him "with dangerous criminals where he feared for his life," and by "cut[ting] him of[f] from his vital blood pressure medication Azor for days." (Doc. 7 at 10).

The Eighth Amendment prohibits "cruel and unusual punishments" from being "inflicted." U.S. Const. Amend. VIII. The Eighth Amendment can be violated by either "acts or omissions." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As to omissions, the Supreme Court held in *Estelle* "that deliberate indifference to serious medical needs of prisoners," *i.e.* lack of action in the face of medical need, violates the Eighth Amendment Cruel and Unusual Punishment Clause because it constitutes "unnecessary and wanton infliction of pain'" and is "repugnant to the conscience of mankind" by offending our "evolving standards of decency." 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 97, 104 (1976)). The deliberate indifference to a serious medical need inquiry incorporates objective and subjective elements into a two-pronged standard. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong is whether the deprivation was "sufficiently serious" and the subjective prong considers whether the state of mind of the official was sufficiently culpable. *Id*.

Adams' allegation that he was jailed in an overcrowded cell does not state a claim under the Eighth Amendment. "While overcrowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities." *Lichtenwalter v. Maier*, No. 5:14CV218, 2014 WL 3749126, at *6 (N.D. Ohio July 29, 2014). "[T]he issue in question is not overcrowding per se—rather, it is unconstitutional overcrowding." *Carver v. Knox Cty.,*

11

*Tenn.*, 753 F. Supp. 1398, 1401 (E.D. Tenn. 1990). In addition to the conditions of the cell itself, courts should consider the length of time that a prisoner is committed to the cell, because even relatively unsanitary or inhospitable conditions may be constitutionally permissible where the stay in those conditions is short. *See Bell v. Wolfish*, 441 U.S. 520, 543 (1979).

Adams avers that the prison cells at the Saginaw County Jail are overcrowded, holding "at least six" more persons than "lawful capacity" permits. Adams does not, however, aver that this overcrowding actually caused any deprivation of the minimal civilized necessities of life. *Lichtenwalter, supra*. These allegations fall far short an Eighth Amendment violation premised on overcrowding, and should be dismissed.

Adams' allegation that he was housed with "dangerous criminals" likewise falls short of stating an Eighth Amendment claim. Adams does not even assert whether he was housed with other pretrial detainees, or convicted persons. Even if Adams averred that he was housed with dangerous, convicted felons (which would be unlikely, given that he was kept in a jail rather than a prison), "the overwhelming weight of persuasive authority holds that unless the state has an intent to punish, or at least displays an indifference toward potential harm to an inmate, pre-trial detainees have no due process right to be housed separately from sentenced inmates." *Burciaga v. Cty. of Lenawee*, 123 F. Supp. 2d 1076, 1078 (E.D. Mich. 2000). *See also Galo v. Gusman*, No. CIV.A. 13-4874-SS, 2014 WL 1689305, at *1 (E.D. La. Apr. 29, 2014) ("[I]t is not per se unconstitutional to house pretrial detainees and convicted inmates together."); *Cooke v. Johns*, No. 5:11-CT-3260-FL, 2013

12

WL 4500668, at *4 (E.D. N.C. Aug. 21, 2013) ("[T]he practice of housing civil detainees with convicted inmates does not, by itself, violate a civil detainee's constitutional rights.").

Adams also asserts that he was not given a necessary blood pressure medication, Azor, while housed in the Saginaw County Jail. (Doc. 7 at 10). There are several problems with Adams' blood pressure medication argument. First, Adams does not assert that he was denied all medical treatment. To the contrary, he claims that he was "pressur[ed] . . . to ingest medications not properly prescribed by a licensed medical doctor." (Doc. 7 at 29). Adams seems to suggest, somewhat unclearly, that he was given medication to treat his medical conditions, but was not provided with the specific Azor brand medication. Adams has not alleged that he suffered any adverse reactions from being given a generic or off-brand blood pressure medication. Where some treatment has been provided, mere disagreement "over the appropriate course of treatment is insufficient to establish an Eighth Amendment claim." *Hill v. Jones*, No. 98–5100, 2000 WL 571948, at *3 (6th Cir. May 3, 2000).

Second, even assuming that Adams asserted that he was wholly denied blood pressure treatment, he has not alleged that the denial of that treatment put him at a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). While risk, rather than actual harm, is sufficient when establishing deliberate indifference to medical needs, *see Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004), Adams does not allege that he suffers from blood pressure ailments so severe that even a temporary denial of Azor was sufficient to put him at a substantial risk of serious harm.

13

Adams has thus failed to raise an Eighth Amendment claim regarding his stay in Saginaw County Prison.

Adams also asserts that

> For as long as there has been an Internet has protected his reputation, not posting pictures of himself online, etc. Adams has been extremely and publicly humiliated by the terrible mug shot now on multiple Internet sites as taken by the Saginaw County Sheriffs following sleepless nights denied a mat and pillow, incarcerated under cruel, inhumane, degrading, disgusting, unsanitary conditions and poor diet inflicted on Adams inside the jail; instead of taking [a] mug shot at the time of or soon after Adams [sic] booking upon arriving fresh and clean at the Saginaw County Jail.

(Doc. 7 at 10). Insofar as Adams intends this to be an extension of his Eighth Amendment claims regarding the allegedly unsanitary and inhumane conditions of the Saginaw County Jail, he fails to state a claim. The Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349. Adams alleges that he was made uncomfortable and unhappy by these conditions, but he does not assert that he suffered any pain or illnesses due to his lack of a pillow and blanket, nor that he was at any risk of serious harm. Under these conditions, no Eighth Amendment claim for cruel and unusual punishment can be found. *See Adderly v. Ferrier*, 419 F. App'x 135, 139 (3d Cir. 2011) (finding that a prisoner who was "deprived of clothing, toiletries, legal mail, a pillow, and a mattress, and was denied access to the law library and showers for seven days" did not suffer cruel and unusual punishment in violation of the Eighth Amendment); *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988) (concluding that a prisoner who was deprived of a pillow and tennis shoes did not suffer a cruel and unusual punishment). Adams' assertion that he was provided with poor quality food likewise fails to state a claim under

14

the Eighth Amendment. Prisoners are entitled to food which is adequate, not appetizing or satisfying to a gourmet; complaints regarding "the preparation or quality of prison food" are thus "far removed from Eighth Amendment concerns." *Cunningham v. Jones*, 567 F.2d 653 (6th Cir. 1977). Adams' complaints are a far cry from the denial of the "minimal civilized measure of life's necessities" required to find an Eighth Amendment violation. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Moreover, Adams does not assert that he was denied a pillow and sheet as punishment, but rather that the Saginaw County Jail is inhospitable. *See Farmer v. Brennan*, 511 U.S. 825, 826 (1994) ("The Eighth Amendment outlaws cruel and unusual 'punishments,' not 'conditions.'"). While conditions could be so severe as to rise to the level of intentional punishment, a prisoner must demonstrate that the prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Adams has failed to show that Saginaw County Jail authorities acted with the intent to punish, or ignored a condition that presented a substantial risk of serious harm.

Finally, Adams' assertion that his reputation, online or otherwise, has been degraded because of a poor-quality photograph taken at the Saginaw County Jail after several days of incarceration is non-meritorious verging on the frivolous. Adams' photo was taken at the jail for administrative purposes, just as photos are taken of every other inmate, and was a matter of public record later acquired by media outlets. That his jailors did not get around to taking the photograph until Adams looked disheveled does not rise to the level of a

15

constitutional deprivation. Adams' incarceration does not entitle him to a pretty portrait. I therefore suggest these claims be dismissed.

### 6. Intentional Infliction of Emotional Distress (Count 10)

Under this claim, Plaintiff alleges that the "acts of Defendants undertaken out of anger and animus toward Adams, particularly threats to taser and the injuring of arrests and incarcerations" caused him damages. (Doc. 7 at 27-28.)

Despite its wider acceptance into the law, the Michigan Supreme Court has never recognized the tort. *See Smith v. Calvary Christian Church*, 462 Mich. 679, 686 n.7 (2000) ("We have not been asked to, and do not, consider whether the tort of intentional infliction of emotional distress exists in Michigan."); *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 597-98 (1985) (noting that court was "constrained from reaching the issue as to whether this modern tort should be formally adopted into our jurisprudence"). Nonetheless, the Court has discussed the tort's elements, as developed by the lower courts. A successful plaintiff must show "(1) 'extreme and outrageous' conduct; (2) intent or recklessness; (3) causation; and (4) 'severe emotional distress.'" *Roberts*, 422 Mich. at 602; *see also Mabry v. Ameriquest Mortg. Co.*, No. 09-12154, 2010 WL 1052353, at *4 (E.D. Mich. Feb. 24, 2010), *Report & Recommendation adopted by* 2010 WL 1052355, at *1 (E.D. Mich. Mar. 19, 2010); *Hayes v. Langford*, 483 Mich. 1125, 1125 (2014) (Markman, J., dissenting).

Plaintiff's case fails on the first and last elements. "It is initially for the trial judge to decide whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress." *Sawabini*

16

*v. Desenberg*, 372 N.W.2d 559, 565 (Mich. Ct. App. 1985). Outrageousness typically is measured by a vague exclamatory test: Would "the recitation of the facts to an average member of the community . . . arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"? *Roberts*, 422 Mich. at 603. The plaintiffs must specify the disputed outrageous conduct. *Mino v. Clio Sch. Dist.*, 661 N.W.2d 586, 598 (Mich. Ct. App. 2003). The test precludes liability for a host of quotidian actions, and even others such as breaching a contract or harassing a debtor. *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1027-28 (N.D. Cal. 2006) (finding that allegations that creditors made phone calls to harass debtors did not state an IIED claim); *Roberts*, 422 Mich. at 605 ("The mere failure to pay a contractual obligation, without more, will not amount to outrageous conduct for purposes of this tort."). As one court noted,

> Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. . . . Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999) (citations omitted). Merely asserting that a defendant did not comply with a statute will not generally be enough. *See Marby*, 2010 WL 1052353, at *4 ("Plaintiff's theory that the law firm did not comply with the FDCPA does not constitute 'outrageous behavior.'"). In addition, whether

17

the acts are "sufficiently outrageous depends on the context in which the defendant made them." *Bhama v. Bhama*, 169 Mich. App. 73, 80 (1988).

Here, even though some actions taken while arresting Plaintiff may be actionable as use of excessive force, the arrest and prosecution of Plaintiff is not conduct so outrageous in character or so extreme in degree as to satisfy the first element of the tort. *Valdez v. United States*, 58 F. Supp. 3d 795, 831 (W.D. Mich. 2014)(false arrest, even where bad faith, assaultive conduct, and racial slurs alleged, was not sufficiently outrageous to meet the first element of IIED claim). Nor has Plaintiff specifically alleged any resulting severe distress. I therefore suggest that this claim be dismissed.

### 7. Municipal liability (Count 11)

This Count does not assert a claim but rather asserts that the Township had a policy, practice or procedure to use excessive force, and that the Saginaw County Sheriff had a policy to not provide Plaintiff with proper medication. (Doc. 7 at 28-29.) These considerations are best considered under the relevant actual claims.

### E. Conclusion

For the reasons set forth above, **IT IS RECOMMENDED THAT** that **all the claims be dismissed except for the excessive force and assault and battery claims in Counts 4 and 8.** Since those claims only logically pertain to Defendants Duffett and Roberts, **IT IS FURTHER RECOMMENDED** that **all Defendants be DISMISSED except for Duffett and Roberts**.

**III.   REVIEW**

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

19

Date: May 25, 2017  S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## CERTIFICATION

    I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Mark Adams at 9949 Van Cleve Road, Frankenmuth, MI 48734.

Date: May 25, 2017  By s/Kristen Castaneda
Case Manager